UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FREEDOM MORTGAGE CORP.,

                          Plaintiff,

           -against-

EDWARD D'AMATO, CELIA D'AMATO,
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY PARKING VIOLATIONS
BUREAU, and NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

                        Defendants.
-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22-CV-7804-HG-SJB

**BULSARA, United States Magistrate Judge:**

       Freedom Mortgage Corporation ("Freedom Mortgage") filed this foreclosure action pursuant to the New York Real Property Actions and Proceedings Law ("RPAPL") on December 22, 2022, against Edward D'Amato, Celia D'Amato, the New York City Environmental Control Board, the New York City Parking Violations Bureau, and the New York City Transit Adjudication Bureau (collectively, the "Defendants"). (Compl. dated Dec. 22, 2022 ("Compl."), Dkt. No. 1). The property subject to foreclosure is 40 Lewiston Street, Staten Island, New York. (*Id.* ¶ 1).

       After Defendants failed to appear and a default was entered against each of them, (Clerk's Entry of Default dated Apr. 18, 2023, Dkt. No. 15), Freedom Mortgage sought a default judgment. (Mot. for Default J. dated Aug. 4, 2023, Dkt. No. 17). On August 4, 2023, Judge Hector Gonzalez referred the motion to the undersigned for a report and recommendation. (Order Referring Mot. dated Aug. 4, 2023). For the following reasons, the Court hereby respectfully recommends that Freedom Mortgage's motion be granted in part and denied in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 15, 2019, Edward D'Amato executed a note with Freedom Mortgage, (Note dated July 15, 2019 ("Note"), attached as Ex. C to Compl., Dkt. No. 1-3), and both Edward and Celia D'Amato (collectively, "the D'Amatos") executed a mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee, encumbering 40 Lewiston Street, Staten Island, New York 10314 (the "Subject Property") in the principal amount of $414,122.00. (Compl. ¶¶ 6–7; Mortgage dated July 15, 2019 ("Mortgage"), attached as Ex. D to Compl., Dkt. No. 1-4). The Mortgage was recorded in the Richmond County Clerk's Office on July 26, 2019. (Compl. ¶ 7; Mortgage). On November 14, 2022, MERS assigned the Mortgage to Freedom Mortgage. (Compl. ¶ 8; Assignment of Mortgage dated Nov. 14, 2022, attached as Ex. E to Compl., Dkt. No. 1-5).

The D'Amatos failed to make a monthly payment due on June 1, 2020, and have continued to default on subsequent payments, placing them out of compliance with the terms and provisions of the Mortgage. (Compl. ¶ 9). Each failure to make a payment constituted an Event of Default under both the Note and the Mortgage. (Note ¶ 6(b); Mortgage ¶ 22). Accordingly, on March 23, 2022, Freedom Mortgage issued Default Notices informing the D'Amatos of the risk of a foreclosure on the Subject Property, if they failed to correct. (Notice of Default dated Mar. 23, 2022, attached to Aff. of Heather Marie Diaz dated Apr. 25, 2023 ("Diaz Aff."), Dkt. No. 17-3 at 10–12). On July 5, 2022, Freedom Mortgage mailed 90-day notices to the D'Amatos, informing them their loan was 764 days and $70,062.56 in default, that they are "at risk of losing [their] home," and that if action is not taken to resolve the matter within 90 days, the Lender "may commence legal action[.]". (90 Day Notices dated July 5, 2022 ("90 Day Notices"), attached to Diaz Aff. at 27–56).

The D'Amatos did not respond to the Notices or cure the defaults. (Compl. ¶ 9). As of May 11, 2023, the D'Amatos owe $408,187.50 of the principal balance, $41,919.11 in accrued interest, $33,288.91 in escrow advances, and $135.00 for a property inspection, for a total of $483,530.52. (Diaz Aff. ¶ 12).

Freedom Mortgage filed the Complaint on December 22, 2022; as of that date, Freedom Mortgage was the owner and holder of both the Mortgage and Note. (Compl. ¶ 2). The Complaint named the D'Amatos as Defendants because they were the borrowers who executed the Mortgage on the Subject Property. (List of Necessary Parties, attached as Ex. B to Compl., Dkt. No. 1-2). It also named as Defendants the Environmental Control Board, Parking Violations Bureau, and Transit Adjudication Bureau as potential judgment creditors. (*Id.*).[1] Each Defendant failed to answer or otherwise respond to the Complaint, and as a result, the Clerk of Court entered default against them. (Clerk's Entry of Default dated Apr. 18, 2023, Dkt. No. 15).

On August 4, 2023, Freedom Mortgage filed a motion for default judgment against all Defendants. (Mot. for Default J. at 1).

DISCUSSION

I. Liability

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-

---

[1] The D'Amatos were served on February 6, 2023, with the summons and Complaint at the Subject Property. (Aff. of Service dated Mar. 16, 2023, Dkt. No. 11 at 1–2). The Environmental Control Board was served on February 7, 2023, at 100 Church Street, 4th Floor, New York, New York 10007. (Aff. of Service dated Mar. 23, 2023, Dkt. No. 13). The Parking Violations Bureau was served on March 7, 2023, at 100 Church Street, 4th Floor, New York, New York 10007, (Aff. of Service dated Mar. 16, 2023, Dkt. No. 11 at 3), and the Transit Adjudication Bureau was served on February 3, 2023, at 130 Livingston Street, Brooklyn, New York 11201. (*Id.* at 4).

2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id.* R. 55(b)(2).

Whether to enter a default judgment is committed to the discretion of the district court, within the limits articulated by the Second Circuit. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits."). That is, the Second Circuit "ha[s] a strong preference for resolving disputes on the merits" and has cautioned that "a default judgment is the most severe sanction which the court may apply." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quotations omitted).

"A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading." *Mateo v. Universal Language Corp.*, No. 13-CV-2495, 2015 WL 5655689, at *4, *6–*7 (E.D.N.Y. Sept. 4, 2015) (finding defendant was not plaintiff's employer based on his testimony that contradicted allegations in the complaint), *report and recommendation adopted*, 2015 WL 5664498, at *1 (Sept. 23, 2015). For example, an allegation is not "well-pleaded" if it is contradicted by other evidence put forth by the plaintiff. *See id.* at *6–*7; *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 151 (E.D.N.Y. 2010) ("[O]nce plaintiffs provided an actual

4

picture of the allegedly infringing pen that contradicted the allegations in the Complaint, those allegations would no longer be considered well-pleaded.").

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). The Court must then determine "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

"Proper service of [an] RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) (alteration in original) (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013)).

A lender can establish compliance with section 1304 in one of two ways: (1) if the "notice or other document was sent through evidence of actual mailing (e.g., an affidavit

of mailing or service)"; or (2) "by proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature." *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556 (2021) (citations omitted). Under the second method, a "lender may create a rebuttable presumption that it complied with § 1304 by submitting 'proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure.'" *Schiffman*, 999 F.3d at 116 (quoting *Citibank, N.A. v. Conti-Scheurer*, 172 A.D.3d 17, 21 (2d Dep't 2019)).

In support of the present motion, Freedom Mortgage submitted an affidavit of employee Heather Marie Diaz that attests to her personal knowledge of Freedom Mortgage's ordinary business practices in the creation, addressing, and mailing of notices: it is the "standard business practice and procedure to have 90 day notices generated and addressed to the mortgagor(s) at the mortgaged premises and also to the last known address provided by the mortgagor(s), if different," and "each notice is to be printed and mailed both by first class and certified mail." (Diaz Aff. ¶ 10). Freedom Mortgage attached copies of the 90 Day Notices with bar codes, and USPS tracking documents demonstrating that the items with those bar codes were actually mailed. (90 Day Notices; USPS Tracking, attached to Diaz Aff. at 59–62). Freedom Mortgage has, therefore, satisfied RPAPL section 1304 by establishing the notices were in fact mailed. *See CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 533 (2d Cir. 2020) (compliance with section 1304 can be "established with proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures, or proof of a standard office mailing procedure designed to ensure that items are properly addressed and

6

mailed, sworn to by someone with personal knowledge of the procedure." (quoting *Conti-Scheurer*, 172 A.D.3d at 21)).

To obtain a default judgment in "a mortgage foreclosure action under New York law, 'the lender must prove . . . the existence of an obligation secured by a mortgage, and a default on that obligation.'" *Gustavia Home, LLC v. Rice*, No. 16-CV-2353, 2016 WL 6683473, at *2 (E.D.N.Y. Nov. 14, 2016) (alteration in original) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997)); *see also E. Sav. Bank, FSB v. Ferro*, No. 13-CV-5882, 2015 WL 778345, at *6 (E.D.N.Y. Feb. 24, 2015). "[I]n a New York mortgage foreclosure action, a plaintiff makes a *prima facie* case . . . where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor." *CIT Bank, N.A. v. Escobar*, No. 16-CV-3722, 2017 WL 3614456, at *4 (E.D.N.Y. June 16, 2017) (quoting *E. Sav. Bank, FSB v. Bright*, No. 11-CV-1721, 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012)), *report and recommendation adopted*, 2017 WL 3634604, at *1 (Aug. 18, 2017). "[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case . . . it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *United States v. Leap*, No. 11-CV-4822, 2014 WL 1377505, at *2 (E.D.N.Y. Feb. 18, 2014), *report and recommendation adopted*, 2014 WL 1383139, at *2 (Apr. 8, 2014).

Freedom Mortgage has submitted the requisite documentation to establish a *prima facie* case for foreclosure. It produced the Mortgage and the Note and has established that default occurred following the D'Amatos' failure to make the June 1, 2020 payment and all subsequent payments. (Compl. ¶ 9). Under the Note, "the Note Holder may require [the borrower] to pay immediately the full amount of Principal

7

which has not been paid and all the interest that [the borrower] owe[s] on that amount" if the borrower is in default. (Note ¶ 6(c)). And under the Mortgage, the "Lender may . . . require immediate payment in full of all sums secured by th[e] Security Instrument if . . . [the borrower] default[s] by failing to pay in full any monthly payment." (Mortgage ¶ 22(a)). Freedom Mortgage has established that following assignment, it is the "owner and holder of the subject Note and Mortgage." (Compl. ¶ 2). Finally, the D'Amatos have not appeared to contest the foreclosure. In light of the unrebutted *prima facie* case, Freedom Mortgage is entitled to foreclosure. *See, e.g.*, *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Toscano*, No. 20-CV-5998, 2021 WL 6424600, at *3 (E.D.N.Y. Dec. 20, 2021) (recommending entry of default judgment where "HUD has presented the requisite documentation to establish a *prima facie* case" and the defaulting defendants "have not made an affirmative showing to overcome the plaintiff's *prima facie* case"), *report and recommendation adopted*, 2022 WL 103678, at *1 (Jan. 11, 2022); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Rhodie as Co-Tr. of Lornice Rhodie Revocable Living Tr.*, No. 21-CV-3165, 2022 WL 3213048, at *3 (E.D.N.Y. Aug. 9, 2022) (same).

The Complaint's allegations against the three New York City entities, the Environmental Control Board, Parking Violations Bureau, and Transit Adjudication Bureau, however, are insufficient to establish liability. "Where a city or any department, bureau, board, commission, officer, agency or instrumentality thereof is a defendant in an action affecting real property, the complaint shall set forth . . . [d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." N.Y. Real Prop. Acts. ("RPAPL") § 202-a. "Detailed facts are shown where the complaint alleges nominal liability—*i.e.*,

8

that any [liens] the Defaulting Defendants may have against the debtor, if liens on the mortgaged property, are subordinate to the plaintiff's lien." *Avail 1 LLC v. Latief*, No. 17-CV-5841, 2020 WL 5633869, at *6 (E.D.N.Y. Aug. 14, 2020) (alteration in original) (quotations omitted), *report and recommendation adopted*, 2020 WL 5633099, at *1 (Sept. 21, 2020).

The sole basis for naming the city agencies is provided in Exhibit B of the Complaint, which states each is a "possible judgment creditor." (List of Necessary Parties). This document, which is not an official document created by any state or city agency and is undated and unsourced, fails to provide the necessary detailed facts. "Because Plaintiff has failed to provide evidence that the City Entities have liens on the Property, the Complaint does not constitute a legitimate cause of action with respect to the City Entities." *Spring Homes LLC v. Rivera*, No. 14-CV-6605, 2016 WL 5793196, at *3 (E.D.N.Y. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 5716499, at *1 (Sept. 30, 2016).

II. <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL

9

2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages, "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages." (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993))).

Freedom Mortgage seeks a judgment of foreclosure and sale with the proceeds applied to the total amount owed of $483,530.52 as of May 11, 2023. (Diaz Aff. ¶¶ 12–13; Proposed J. of Foreclosure and Sale ("Proposed J."), attached as Ex. 1 to Mot. for Default J., at 5). The total damages amount includes: $408,187.50 in principal owed on the Note, $41,919.11 in accrued interest, $33,288.91 in total escrow advances, and $135.00 in property inspections. (Diaz Aff. ¶ 12). By virtue of their default, the D'Amatos have not objected to Freedom Mortgage's calculations.

The Court confirmed the following calculations:

As of May 11, 2023, the remaining principal balance was $408,187.50. (Proposed J. at 2; Diaz Aff. ¶ 12).

Freedom Mortgage requests $41,919.11 in interest on the unpaid principal balance from May 1, 2023 to May 10, 2023. (Proposed J. at 2; Diaz Aff. ¶ 12). The terms of the Note provide a yearly interest rate of 3.5%. (Note ¶ 2, Compl. ¶ 10). To calculate the *per diem* interest rate, the Court multiplies the 3.5% interest rate by the unpaid principal balance of $408,187.50, divides by 365, for a $39.14 *per diem* interest rate. There are 1,104 days between May 1, 2020 and May 10, 2023; multiplying the *per diem* rate ($39.14) by 1,104 days, the total interest owed is $43,210.56. Because both the Diaz Affidavit and the Proposed Judgement of Foreclosure and Sale request $41,919.11 in interest for those dates, the Court recommends awarding $41,919.11 in interest due as of May 10, 2023, plus additional interest at a rate of $39.14 per day from May 11, 2023 until the Court enters judgment.[2]

Freedom Mortgage also seeks $33,288.91 in escrow advances. (Proposed J. at 2, Diaz Aff. ¶ 12). Attached to the Diaz Affidavit is a "Detail History," which provides the balances as of April 20, 2023 and shows the escrow balance as $33,288.91. (Detail History, attached to Diaz Aff. at 7–9). The Diaz Affidavit does not, however, explain the escrow balance or what the Detail History shows. Courts have awarded escrow reimbursement where a plaintiff provides a sworn affidavit explaining the escrow charges along with a detail history. *See Freedom Mortg. Corp. v. McLain*, No. 23-CV-1309, 2023 WL 8473948, at *6 (E.D.N.Y Oct. 12, 2023), ("According to Diaz, these escrow advances correspond with costs incurred to obtain insurance for the property and pay taxes related to the property."), *report and recommendation adopted*, 2023 WL

---

[2] Freedom Mortgage does not explain how it calculated the $41,919.11 interest requested. Though it is lower than the Court's calculation, the Court recommends granting the amount Freedom Mortgage requested.

11

7320257, at *2 (Nov. 7, 2023); *see also ARCPRE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417, 2022 WL 2467085, at *4 (E.D.N.Y. Apr. 15, 2022) ("Although the 'escrow advances' schedule does not specifically indicate that the disbursements were made in order to insure the property, Olson's sworn affidavit sufficiently explains the purpose of these disbursements such that an award of insurance costs is warranted."). Diaz does not explain why the escrow advances are owed under the Note and Mortgage and does not explain the Detail History. Without this information, the Court cannot award $33,288.91 in escrow advances. Therefore, the Court respectfully recommends that Freedom Mortgage's request for reimbursement for escrow advances be denied at this time, with the right to renew within 30 days if Freedom Mortgage can produce supporting documentation. *See Ditech Fin. LLC v. Durdu*, No. 19-CV-977, 2020 WL 8413566, at *5 (E.D.N.Y. Aug. 24, 2020) (denying without prejudice recovery of escrow advances where "the Court [was] unable to verify when these disbursements were made and the total amounts allegedly due to plaintiff"), *report and recommendation adopted*, 2021 WL 194041, at *2 (Jan. 20, 2021); *see also Ditech Fin. LLC v. Singh*, No. 15-CV-7078, 2017 WL 4271655, at *5 (E.D.N.Y. Sept. 6, 2017) (declining to award escrow advances where the Court "found it difficult to understand the report listing the specific items comprising [the] amount" and Plaintiff failed to provide "a list of recoverable items and a record of how the total amount was calculated"), *report and recommendation adopted*, 2017 WL 4233023, at *1 (Sept. 22, 2017).

Freedom Mortgage also seeks to recover $135.00 in property inspection fees. (Proposed J. at 2; Diaz Aff. ¶ 12). Freedom Mortgage is entitled to "fees for services performed in connection with [the borrower's] default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument,

including . . . property inspection." (Mortgage ¶ 13). But Freedom Mortgage did not include any log or invoice to demonstrate its entitlement to this reimbursement. All it included was the Diaz Affidavit, which provides no explanation or support; it only lists what Diaz has calculated is owed. (Diaz Aff. ¶ 12). Again, without sufficient detail, the Court cannot say with reasonable certainty that Freedom Mortgage should be awarded $135.00 in property inspection fees.

Freedom Mortgage also seeks reimbursement for "[t]he reasonable expenses of the sale, including the cost of advertising as shown on the bills presented and certified by the Referee to be correct," and "all taxes, assessments, sewer rents, water rates and any other charges . . . with interest." (Proposed J. at 4–5). When granting default judgment, courts generally are not permitted "to award damages that exceed what the plaintiff requested in its complaint." *Windward Bora, LLC v. Castiglione*, No. 18-CV-1766, 2019 WL 2435670, at *5 (E.D.N.Y. Jan. 10, 2019) (citing *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 121 (E.D.N.Y. 2013)), *report and recommendation adopted*, Order (Mar. 8, 2019). Here, however, given that Freedom Mortgage did seek the "expenses of sale," the Court finds that this phrase "logically includes" Freedom Mortgage's stated costs. *Windward Bora LLC v. Baez*, No. 19-CV-5698, 2020 WL 4261130, at *6 (E.D.N.Y. July 24, 2020) (granting reimbursement of foreclosure and sale expenses where "expenses of the sale" were sought) (collecting cases); *Windward Bora LLC v. Thomas*, No. 20-CV-5320, 2022 WL 14731628, at *11 (E.D.N.Y. Sept. 30, 2022) (same).

"A plaintiff in a foreclosure action may recover . . . costs against a borrower-defendant if the note or mortgage provides for such an award." *U.S. Bank Nat'l Ass'n v. Swezey*, No. 20-CV-91, 2022 WL 1422841, at *10 (E.D.N.Y. Mar. 24, 2022), *report and*

*recommendation adopted*, 2022 WL 2390989, at *1 (July 1, 2022). The Mortgage allows for the collection of all costs by the Lender, Freedom Mortgage. (Mortgage ¶ 24 ("Lender will have the right to collect all costs allowed by law[.]")). Therefore, the Court respectfully recommends that Freedom Mortgage be awarded these expenses.

III. Attorney's Fees and Costs

Freedom Mortgage seeks attorney's fees in the amount of $5,650.00. (Decl. of Services Rendered, attached as Ex. L to Mot. For Default J., Dkt. No. 17-16 ¶ 7; Proposed J. at 5). The Note provides that in the event of default, "the Note Holder will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note . . . . includ[ing], for example, reasonable attorneys' fees." (Note ¶ 6(e)). Accordingly, Freedom Mortgage is entitled to recover reasonable attorney's fees resulting from the foreclosure proceeding and Defendants' default. "Because [Plaintiff's counsel] charges a flat fee for foreclosure work, individual time sheets are not maintained." (Decl. of Services Rendered ¶ 6). In lieu of time records, Plaintiff submitted a list of services that were performed in connection with the action. (*Id.*).

"[C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). "Courts in this District have denied fee requests where plaintiff failed to maintain contemporaneous time records." *McLain*, 2023 WL 8473948, at *8 (collecting cases). But "with flat fee arrangements becoming more common, several courts have recognized attorney's fees can be awarded without contemporaneous time records." *Id.* (collecting cases). In a similar case with the same plaintiff and same counsel, a court in this District recommended awarding attorney's fees based on the record and affidavit provided. *Id.* However, "in light of counsel's failure to provide contemporaneous time

records, and the inauspicious quality of plaintiff's motion," the Court also recommended the fees be reduced to $2,825.00, 50% of the requested amount. *Id.* (collecting cases where fee reduction is appropriate remedy for lack of contemporaneous time records). Here, due to the same issues, the Court respectfully recommends that plaintiff be awarded $2,825.00 in attorney's fees.

Freedom Mortgage also seeks $1,108.00 in costs. (Bill of Costs, attached as Ex. K to Mot. for Default J., Dkt. No. 17-15 at 1; Proposed J. at 5). Plaintiff submits a bill of costs requesting $402.00 for the filing fee, $670.00 for service of process fees, and $36.00 for the filing of the Notice of Pendency pursuant to CPLR § 8021(a)(10). (Bill of Costs at 1). The Court finds these costs are reasonable. *See McLain*, 2023 WL 8473948, at *8 (granting costs for federal filing fee, service of process, and notice of pendency filings). Therefore, Freedom Mortgage should be awarded $1,108.00 in costs.

IV.   Judgment of Foreclosure and Sale

Freedom Mortgage requests "that the mortgaged property described in the Complaint . . . be sold, in one parcel, at a public auction . . . under the direction of Andrea S. Ferrante, Esq.," appointed as Referee. (Proposed J. at 3). By presenting the Mortgage, Note, and proof of default on those instruments as a result of the D'Amatos' failure to make the June 1, 2020 payment and subsequent payments, Freedom Mortgage has established a presumptive right to foreclose on the Subject Property, and the D'Amatos have not appeared to overcome this *prima facie* showing. *See Leap*, 2014 WL 1377505, at *2. The Court recommends the appointment of this Referee, Andrea S. Ferrante, Esq., and that a Referee fee be paid in the sum of $750.00 from the proceeds of the sale, as proposed by Freedom Mortgage. (Proposed J. at 4); *see, e.g.*, *Rhodie*, 2022 WL 3213048, at *5 (appointing plaintiff's proposed referee and approving a

$750.00 fee as reasonable); *Windward Bora, LLC v. Brown*, No. 21-CV-3147, 2022 WL 875100, at *7 (E.D.N.Y. Mar. 24, 2022) (same); *Gilbert*, 2022 WL 344270, at *4 (same); *Leap*, 2014 WL 1377505, at *3 (recommending same).

CONCLUSION

For the reasons described above, the Court respectfully recommends Freedom Mortgage's motion for default judgment be granted in part and denied in part and that:

1. The District Court order the foreclosure and sale of the Subject Property located at 40 Lewiston Street, Staten Island, New York 10314;

2. The proposed Referee be appointed to conduct the sale and receive a fee in the sum of $750.00 from the proceeds of the sale;

3. Freedom Mortgage be awarded the principal balance of $408,187.50;

4. Freedom Mortgage be awarded $41,919.11 in accrued interest from May 1, 2020 to May 10, 2023;

5. Freedom Mortgage be awarded *per diem* $39.14, beginning from May 11, 2023 until the date judgment is entered, and post-judgment interest at the statutory rate under 28 U.S.C. § 1961(a) from the date judgment is entered until judgment is satisfied;[3]

6. Freedom Mortgage be awarded expenses of sale and the advertising expenses as shown on the bills presented to the Referee and certified by her, in addition to any sums expended for taxes, assessments, water rates, and sewer rents, with

---

[3] "The Second Circuit has recognized that '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'" *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005, 2023 WL 2542702, at *11 (E.D.N.Y. Feb. 14, 2023) (alteration in original) (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)), *report and recommendation adopted*, Order (Mar. 16, 2023).

interest and penalties accrued thereon, or so much thereof as the purchase money of the mortgaged premises will pay of the same;

7. Freedom Mortgage be awarded $2,850.00 in attorney's fees, and $1,108.00 in costs;

8. Freedom Mortgage's request for $33,288.91 in escrow advances and $135.00 in property inspection fees be denied without prejudice, with the right to renew within 30 days; and

9. Freedom Mortgage's motion for judgment against the New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau be denied and the defaults against them be vacated.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Freedom Mortgage is directed to serve a copy of this Report and Recommendation on the D'Amatos and file proof of such service on the record.

SO ORDERED.

*/s/Sanket J. Bulsara*   January 22, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York